CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED
September 18, 2025
LAURA A. AUSTIN, CLERK
BY: s/J.Vasquez
       DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| JOSEPH DILLARD, | ) |
| Plaintiff, | ) Case No. 7:24-cv-00592 |
| v. | ) **MEMORANDUM OPINION** |
| BRADY WILSON, *et al.*, | ) By:  Hon. Thomas T. Cullen |
|  | )      United States District Judge |
| Defendants. | ) |

Plaintiff Joseph Dillard, proceeding *pro se*, filed a civil-rights action asserting claims under 42 U.S.C. § 1983 against Middle River Regional Jail employees Brady Wilson, Samuel Turner, and Omar Benson (collectively, "Defendants"). (*See* Compl. [ECF No. 1].) Defendants have jointly moved to dismiss Plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim for which relief may be granted.[1] (*See* Defs.' Mot. to Dismiss [ECF No. 14].) For the following reasons, the court will grant Defendants' motion and dismiss Plaintiff's claims in their entirety.

## I.

Plaintiff's complaint contains few factual allegations. (*See* Compl. 2.) In support of his claims, Plaintiff alleges only that,

> [o]n 8.4.2024, Floor Officer Brady Wilson confined me to my cell without a[] charge or a[] hearing to do so, which he neglect[ed] to penalize other inmates for the same offen[s]e.

---

[1] Although Defendants' motion states it is also brought under Federal Rule of Civil Procedure 12(b)(1), Defendants' memorandum of law in support of their motion mentions only Rule 12(b)(6) and makes no arguments that this case should be dismissed for lack of subject matter jurisdiction. (*See* Memo. in Supp. of Defs.' Mot. to Dismiss 1 [ECF No. 15].)

> Sgt. Samuel Turner and Corporal Omar Benson agreed [with] him doing so after I let them know what had happened.

(*Id.*) A few months after filing his complaint, Plaintiff filed an untitled document listing additional allegations. (*See* Pl.'s Additional Evid. [ECF No. 12].) In that document, Plaintiff alleges that, on August 4, 2024, at around 8:45 a.m., Wilson locked him in his cell without any charge or hearing because Plaintiff had a clothesline hanging in his cell. (*Id.* at 1.) Wilson then walked two cells down and told the inmates in that cell to uncover their lights for the second time. (*Id.*) Plaintiff alleges that he was punished while the other inmates were not due to "favoritism." (*Id.*)

Plaintiff filed a grievance, and Corporal M. Hutchins responded to his grievance on August 7, 2024, stating, "The officers have been instructed to lock cells down if they are out of compliance with the regulations regarding the state of a cell. They do not need a charge or a hearing to do so. If you have an issue with a particular officer's decision, it would be beneficial to you to request the presence of a shift supervisor at the time of the lockdown[.]" (*Id.* at 2.) Plaintiff maintains that being confined to his cell without a charge justifying the confinement was a violation of his Fourteenth Amendment right to due process. (*Id.* at 1–2.) He further claims that Turner and Benson contributed to the violation by allowing the "non-charged lockdown" to proceed. (*Id.* at 2.)

Plaintiff also alleges that, in retaliation for his filing this lawsuit, while Turner, Benson, and Hutchins were performing rounds in Plaintiff's cell block on November 8, 2024, Hutchins wrote him a charge for malicious destruction, alteration, or misuse of facility or personal property for graffiti that was on the wall of his current cell. (*Id.* at 4.) Plaintiff alleges that the graffiti was already in the cell before he occupied it and had been painted over, and the graffiti

- 2 -

only became visible again because the paint had started to peel. (*Id.*) Nevertheless, Plaintiff claims he was charged as if he had added new graffiti to the cell wall. (*Id.*) Plaintiff further alleges that other officers were told to charge him every day until he scrubbed the wall clean of graffiti. (*Id.*) The next day, Plaintiff was charged again for the same offense by a different officer. (*Id.*)

Defendants now move to dismiss Plaintiff's complaint for failure to state a claim. (*See* Defs.' Mot. to Dismiss 1.) Defendants' motion is ripe for review.

## II.

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint. *Occupy Columbia v. Haley*, 738 F.3d 107, 116 (4th Cir. 2013). To survive such a motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To be "plausible," a plaintiff's claim must be supported by factual allegations sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although this "plausibility" standard is not akin to "probability," it does require "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The complaint must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

"In deciding whether a complaint will survive a motion to dismiss, a court evaluates the complaint in its entirety, as well as documents attached or incorporated into the complaint." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011) (citations omitted). Additionally, the court "must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff." *Hall v. DIRECTV, LLC*, 846 F.3d 757, 765 (4th Cir. 2017) (citations omitted). And, because Plaintiff is proceeding *pro se*, the allegations are construed "liberally" in his favor. *Shaw*, 59 F.4th at 127. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief" as required by Rule 8. *Iqbal*, 556 U.S. at 679 (cleaned up).

### III.

Plaintiff's claims arise under 42 U.S.C. § 1983, which authorizes a civil action by a citizen who is deprived of "any rights, privileges, or immunities secured by the Constitution and laws" of the United States by a person acting under color of state law. To state a claim under § 1983, a plaintiff must allege both (1) "the violation of a right secured by the Constitution and laws of the United States" and (2) "that the alleged deprivation was committed by a person acting under color of state law." *Crosby v. City of Gastonia*, 635 F.3d 634, 639 (4th Cir. 2011) (quoting *West v. Atkins,* 487 U.S. 42, 48 (1988)). Liberally construing Plaintiff's complaint and the allegations in his later-filed document, Plaintiff raises claims for violations of his Fourteenth Amendment rights to due process and equal protection and a First Amendment retaliation claim.

### A. Fourteenth Amendment Due Process Claims

The Due Process Clause of the Fourteenth Amendment protects against deprivations of life, liberty, or property without due process of law. U.S. Const. amend. XIV. To state a § 1983 claim based on a violation of procedural due process, a plaintiff must "(1) identify a protected liberty or property interest and (2) demonstrate deprivation of that interest without due process of law." *Prieto v. Clarke*, 780 F.3d 245, 248 (4th Cir. 2015). Prisoners can have liberty interests in certain conditions of their confinement whose deprivation triggers procedural due process protections. *Id.* (citing *Meachum v. Fano*, 427 U.S. 215 (1976); *Wolff v. McDonnell*, 418 U.S. 539 (1974)); *see Thorpe v. Clarke*, 37 F.4th 926, 942 (4th Cir. 2022) ("Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, but a prisoner's liberty does not disappear entirely.").

A due process claim by a convicted prisoner requires showing (1) the "denial of an interest that can arise either from the Constitution itself or from state law policies" and (2) that "this denial imposed on him an atypical and significant hardship in relation to the ordinary incidents of prison life." *Prieto*, 780 F.3d at 251 (citations omitted). Temporary lockdowns have been held insufficient to create a constitutionally protected liberty interest as required to support a due process claim, "regardless of whether it is an individualized sanction or an institution-wide lockdown." *Patrick v. Newton*, No. 7:20-CV-00617, 2020 WL 7753966, at *2 (W.D. Va. Dec. 29, 2020) (collecting cases); *cf. Alley v. Angelone*, 962 F. Supp. 827, 834 (E.D. Va. 1997) ("[A]n institutional lockdown is within the normal range of incarceration. Plaintiffs were not entitled to due process prior to the imposition of an institutional lockdown.").

Even to the extent Plaintiff was a pretrial detainee and not a convicted prisoner—his complaint does not say—the Supreme Court has recognized that "[l]oss of freedom of choice and privacy are inherent incidents of confinement." *Bell v. Wolfish*, 441 U.S. 520, 537 (1979). And "if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'" *Id.* at 540. The Supreme Court has recognized that the government has legitimate interests in managing detention facilities and maintaining jail security. *Id.* ("[T]he effective management of the detention facility once the individual is confined is a valid objective that may justify imposition of conditions and restrictions of pretrial detention[.]").

Even taking Plaintiff's allegations as true, the court cannot find that temporary confinement to his cell triggered a need for constitutional due process. Accordingly, the court will dismiss Plaintiff's Fourteenth Amendment due process claims against Defendants.

### B. Fourteenth Amendment Equal Protection Claims

The Equal Protection Clause of the Fourteenth Amendment "prohibits states from placing people into different classes and treating them unequally for reasons 'wholly unrelated' to permissible government objectives." *Kadel v. Folwell*, 100 F.4th 122, 141 (4th Cir. 2024) (quoting *Reed v. Reed*, 404 U.S. 71, 75–76 (1971)). To state a § 1983 claim based on an equal protection violation, absent direct evidence of discrimination, a plaintiff must show that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001); *Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586, 607 (4th Cir. 2020), *as amended* (Aug. 28, 2020) ("[S]tate action is unconstitutional when it creates arbitrary

or irrational distinctions between classes of people out of a bare desire to harm a politically unpopular group.") (citations omitted).

Plaintiff alleges that he was treated differently than other inmates who violated regulations related to the state of their cells. But Plaintiff has not shown that those inmates were similarly situated to Plaintiff. Plaintiff was confined to his cell because he had hung a clothesline in his cell; the other inmates hand not hung clotheslines but had covered their lights. As Defendants point out, there are noteworthy differences between hanging a clothesline and covering a light—most significantly, that a clothesline could be used as a weapon or could obstruct entry into a cell. (*See* Memo. in Supp. of Defs.' Mot. to Dismiss 7–8.) Plaintiff has not alleged that any other inmate who had hung a clothesline was not confined to his cell. Nor has he demonstrated any discriminatory motivation on the part of Defendants other than a bald assertion of "favoritism." For these reasons, the court will grant Defendants' motion to dismiss as to Plaintiff's equal-protection claims.

### C. First Amendment Retaliation Claims

"[T]he First Amendment prohibits public officials from retaliating against individuals for having engaged in protected speech." *Gowen v. Winfield*, 130 F.4th 162, 173 (4th Cir. 2025) (citing *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 545 (4th Cir. 2017)). "To state a colorable First Amendment retaliation claim, a plaintiff must allege that (1) he engaged in protected First Amendment activity, (2) the defendant took some action that adversely affected his First Amendment rights, and (3) there was a causal relationship between his protected activity and the defendant's conduct." *Jones v. Solomon*, 90 F.4th 198, 213 (4th Cir. 2024) (quoting *Martin v. Dufy*, 977 F.3d 294, 299 (4th Cir. 2020)). To prove a causal connection, the plaintiff must show

that "the defendants were aware of the plaintiff's engaging in a protected activity and show some degree of temporal proximity to suggest a causal connection." *Gowen*, 130 F.4th at 173 (citations and internal quotation marks omitted).

Plaintiff has not stated a plausible First Amendment retaliation claims against any of the named Defendants because he has not alleged that Defendants themselves took any action that adversely affected Plaintiff's First Amendment interests after he filed this lawsuit. Instead, Plaintiff alleges that non-party Corporal M. Hutchins and "another officer" wrote him up on unjustified graffiti charges. (Pl.'s Additional Evid. 4.) He alleges only that Benson and Turner were making rounds with Hutchins at the time of the first write up and that Turner approved of the charge. (*See id.*)

To the extent Plaintiff seeks to bring retaliation claims against Benson or Turner under a theory of supervisory liability, those claims are also unsupported. "Supervisory officials may be held liable in certain circumstances for the constitutional injuries inflicted by their subordinates." *Johnson v. Robinette*, 105 F.4th 99, 123 (4th Cir. 2024) (quoting *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994)). To state a claim based on supervisory liability, the plaintiff must allege:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Id.* (quoting *Shaw*, 12 F.3d at 799). Plaintiff has not clearly alleged that either Benson or Turner was Hutchins's supervisor or had the authority to prevent him from issuing the graffiti charge.

And Plaintiff's own allegations that the officers did not observe the graffiti closely from within the cell belies any assumption that the officers knew the graffiti was old yet allowed Plaintiff to be charged for new graffiti because he had filed a lawsuit. In short, Plaintiff has not alleged facts showing an affirmative causal link between Benson and Turner's presence or Turner's approval of the graffiti charge and any infringement on Plaintiff's First Amendment rights. Accordingly, Plaintiff has failed to state a plausible claim for First Amendment retaliation against Defendants.

## IV.

For the reasons set forth above, the court will grant Defendants' motion to dismiss and dismiss Plaintiff's claims.

The Clerk is directed to send a copy of this Opinion and the accompanying Order to the parties.

**ENTERED** this 18th day of September, 2025.

> */s/ Thomas T. Cullen*
> HON. THOMAS T. CULLEN
> UNITED STATES DISTRICT JUDGE